No. 4655.

## WILLIAM B. KEMP *v.* E. P. ELLIS.

The provisions of the act of the Legislature, No. 39, 1873, for transferring cases are not repugnant to articles 83, 90 and 114 of the State Constitution.

The Warmoth commissions that were issued before the general election returns were reported and promulgated by the returning officers of the State, are null and void.

The court will take judicial cognizance of that irregularity which renders the issuing of a commission null and void, as having been done in contravention of positive law.

A commission issued by the Governor must be recognized as having legal force, when it bears *prima facie* evidence of genuineness and validity, and nothing to the contrary is shown.

APPEAL from the Superior District Court, parish of Orleans. *Hawkins*, J. *H. O. Dibble and E. F. Russel*, for plaintiff and appellee. *J. H. Muse and T. & J. Ellis*, for defendant and appellant.

Justices concurring: Ludeling, Taliaferro, Howell, Morgan.

TALIAFERRO, J.    William B. Kemp and Ezekiel P. Ellis contend for the office of District Judge of the Sixth Judicial District of the State. Each claims to be legally entitled to the office. Each claims to have been duly elected to that office at the general election held on the fourth of November, 1872, and each presents a commission purporting to have been issued under the authority of the State, but by different persons acting at different times as Governor of the State.

This proceeding was commenced in the parish of Tangipahoa, and what adds to the complications presented there are two persons claiming the office of Parish Judge of that parish, C. J. Bradley and J. W. Addison. The contestants for the office of District Judge severed in their recognition of a legal parish judge.

Kemp presented in that parish a petition addressed to the judge of the Sixth Judicial District setting up his title to that office and prayed that Ellis be cited to show cause why the petitioner should not be declared entitled to the office and to be inducted into it. Upon this petition he rendered an order recusing himself and referring the case to C. J. Bradley as parish judge for investigation and decision. This order was rendered on the tenth of February, 1873. On the second of January previously a suit was insituted in the parish of St. Helena, one of the parishes of the Sixth Judicial District, by the attorney of the District, against Kemp, praying that he be declared an usurper, and that Ellis be declared legally entitled to the office of district judge.

About the same time a similar action was brought in the parish of Tangipahoa against Bradley in the interest of Addison, claiming to be the lawful parish judge of that parish. This suit was brought in the District Court, and in pursuance of the prayer of the petition, Ellis acting as district judge, granted an injunction against Bradley, prohibiting him from discharging the duties of parish judge. In this state of affairs, on the eighth of March, Kemp filed in the Superior Court of

the parish of Orleans, an application under the act of the Legislature approved the fifth of March, 1873, numbered 39, to regulate proceedings in contestations between persons claiming judicial office, to have his case against Ellis transferred to that court.

An order was accordingly rendered by the Superior Court, addressed to Bradley as parish judge of Tangipahoa, directing him to transfer the case, which was accordingly done under an order rendered by him on the eighth of March, 1873. When the case was opened in the Superior Court, the defendant filed a motion to rescind the orders and proceedings under which the transfer of the case was made, alleging as grounds in support of this motion that the provisions of said act No. 39 for transferring causes is repugnant to articles 83 and 90 of the State constitution; that the plaintiff's order recusing himself and transferring the case to C. J. Bradley, as parish judge, was null and of no effect, because, by the plaintiff's own showing, he was not at that time the acting district judge of the district; that he could make no order in his own case affecting the rights of the defendant; that the legal parish judge of Tangipahoa was not incompetent to try the case; that C. J. Bradley was not at the time he made the order of transfer the acting parish judge of the parish of Tangipahoa, and could not take cognizance of the proceeding in any manner.

The defendant also excepted on various grounds to any action being taken in the case by the Superior Court. He alleges that that court has no jurisdiction *ratione materiæ* or *ratione personæ*, the parties and the subject matter being without the limits of the parish of Orleans, and that the act No. 39, of July 15, 1873, in that respect violates article 83 of the constitution; that it is in violation of article 114 of the constitution, as the different objects embraced in the act are not set out in its title; that it is an *ex post facto* law; that the same suit for the same object and between the same parties is now pending in the district court of the parish of St. Helena, and he therefore pleads *lis pendens*. In his answer to the merits, the defendant alleges that at the general election held on the fourth of November, 1872, he was duly elected district judge of the Sixth Judicial District, and in pursuance thereof he was regularly commissioned by the Governor of the State, and qualified under that commission by filing his oath of office with George E. Bovee, Secretary of State.

On hearing the case in the court below the judge rendered judgment in favor of the plaintiff and the defendant has appealed. The exception taken by the defendant to the legality of the transfer of the cause will first be considered. Article 112 of the State Constitution provides that " the General Assembly shall provide by law for all change of venue in civil and criminal cases." The principle on which a change of venue is accorded, either in civil or criminal cases, is

grounded in considerations of public policy to secure to parties whose rights are at stake in legal controversies a fair and impartial trial. At the domicile of the parties it not unfrequently happens that partialities exists in the public mind in favor of one of the litigants and undue prejudices against the other. One of them through the advantages of wealth, family connections, popularity, or a predominance of political feeling, or some other adventitious circumstance, might have a controlling influence in his own vicinity which would place his adversary at great disadvantage in a contest with him at law. Hence a party litigant on making a declaration under oath that, from any sufficient cause specially set forth he fears he would be unable to obtain a fair trial, may obtain a change of venue. Revised Statutes, p. 760. The act No. 39 of March 5, 1873, to obviate the difficulties that would ensue from an inability arising from any cause to obtain a decision of a controversy for a judicial office, provides against such a contingency. Section third of that act provides that " in case of recusation or inability from any cause whatever the judge or judges of the parish or district wherein the persons so contesting shall reside shall be unable to act, then and in that case the plaintiff in said rule may take said rule before the judge of the adjoining parish or judicial district, or to the Superior Court at New Orleans, as he may deem advisable, and in cases now pending in which contestation between persons claiming judicial office is the subject matter at issue, either party shall have the right to have his cause removed to the adjoining parish or judicial district, or to the Superior Court at New Orleans, upon application to the judge of any adjoining parish or judicial district, or Superior Court at New Orleans, and affidavit of the recusation or inability of the judge to act from any legal cause, and upon the party filing said application and affidavit, the court shall by order direct the removal of such cause, and the record shall thereupon be transferred to the said court; and in case of inability on the part of the party applying to obtain said record, or a duly certified copy thereof, sworn copies of the record may be filed with the court, and the case shall thereupon be tried in same manner as if the original record was with the court; provided, that before any case so removed at the instance of any party shall be proceeded with, the court making the removal shall require that the adverse party shall have twenty-four hours' notice, with an additional twenty-four for every ten miles his place of residence may be from the court."

The plaintiff, as we have seen, filed a suit in the District Court of the parish of Tangipahoa, in the Sixth Judicial District, on the tenth of February, 1873, setting up claim to the office of district judge of that district. He brought this action under the act No. 39 of fifteenth of January, 1873. He entered an order recusing himself, and referred

the matter for decision to C. J. Bradley, as parish judge of the parish of Tangipahoa. A suit under the intrusion act had previously been instituted in the interest of Addison, claiming the office of parish judge of that parish, and in that suit Ellis had rendered an order on the third of January, 1873, granting an injunction prohibiting Bradley from discharging the duties of parish judge of the parish of Tangipahoa. This fact was alleged and sworn to by the plaintiff in his motion before the Superior Court to have the cause transferred to that court. He might have had, for aught that appears, valid objections to having the case instituted against him under the intrusion act in the interest of his competitor, tried before the parish judge of the parish of St. Helena; at all events that suit did not prevent him from resorting to a different form of action in his own case, and that form which is specially presented by law for the decision of contestations for judicial offices.

Each of these contestants charges that the other is devoid of legal right to the office in controversy.

Kemp sets forth in his petition that the defendant, Ellis, "assumes to exercise the duties and functions of district judge of the said Judicial District of Louisiana wrongfully, illegally and in contravention of the rights of this petitioner as herein set forth, pretending and claiming to be the judge of said district," etc.

In the intrusion suit of Ellis against Kemp it is alleged that "William Breed Kemp, of St. Helena parish, has unlawfully set up claim and title to said office, and has usurped and intruded into the same without the shadow of an honest or legal title." The petition prays that "he be decreed to be an intruder and usurper, and perpetually excluded from said office," etc. Each of the parties swears to the truth of the allegations in their pleadings.

The parish judge of St. Helena to whom the case of Ellis v. Kemp was referred, granted an order that an injunction issue as prayed for, restraining Kemp from acting or assuming to act as judge of said district.

We conclude that the plaintiff had the right to have the case transferred.

The next inquiry is had C. J. Bradley the right to render the order of transfer?

And now, under the confused state of litigation that appears to exist in that judicial district in relation to judicial offices, and the contradictory evidence we find in the record, to enable us to decide the question it becomes necessary for us to determine incidentally which of the two claimants of the office of parish judge of the parish of Tangipahoa had *prima facie* the right to render the order of transfer. Each of these parties, like the contestants for the district judgeship, presents a commission. The commission of Addison is dated December 4, 1872,

and was issued by Governor Warmoth. Bradley holds the commission of Governor Kellogg, dated twenty-fourth January, 1873. We have several times decided that the Warmoth commissions that were issued like the one in the present case, before the general election returns were reported and promulgated by the returning officers for the State, are null and void. Bradley, therefore, holding a commission, regular and legal on its face, must be considered as *prima facie* entitled to the office, and therefore that he had the right to render the order of transfer.

On the merits the case is to be disposed of under the provisions of the law enacted on the fifth of March, 1873, number 39. The question then is which of the contestants holds the legal and valid commission ? The defendant's commission was issued by Governor Warmoth on the fourth day of December, 1872, before the general election returns had been officially made out and promulgated as required by law, and before he could legally issue a commission. The court, as was said in the case of Collin *v.* Knoblock, lately decided, will take judicial cognizance of that irregularity which renders the issuing of a commission null and void, as having been done in contravention of positive law.

The plaintiff holds the commission of Governor Kellogg, issued on the twenty-fourth of January, 1873.

This commission bears *prima facie* evidence of its genuineness and validity, and nothing to the contrary being shown, must be recognized as having legal force. The reasons assigned in the case of Collin *v.* Knoblock apply in the general to this case. It becomes unnecessary to pass upon the various bills of exceptions found in the record.

It is therefore ordered, adjudged and decreed that the judgment of the Superior Court be affirmed with costs.

---

WYLY, J., *dissenting:* This suit for the office of judge of the Sixth Judicial District was brought at the domicile of the defendant in the parish of Tangipahoa. It was subsequently transferred to the Superior District Court, parish of Orleans, and there was rendered the judgment in favor of the plaintiff which a majority of this court affirms.

The first question is, had the Superior District Court jurisdiction of the case?

If the jurisprudence of this State is settled upon any point, it is that a defendant must be sued at his domicile, as provided by article 162, C. P., except in the cases expressly excepted from the operation of that article. It has been repeatedly decided that the law alone gives jurisdiction, and the parties can not by consent supply the want of jurisdiction.

17

In the case of Watkins, 21 An. 258, there was a controversy for the office of judge of the Eleventh District Court, and the suit was brought before Judge Levisee, of the Tenth District Court. This court of its own motion dismissed the suit, because it appeared that Watkins' domicile was not in the Tenth District, parish of Caddo, but in the Eleventh District, parish of Claiborne; and this court held that because the judge of the Eleventh District Court was interested and could not try the case, it did not follow that the suit might be brought before the judge of the Tenth District Court; that article 90 of the constitution "has directed how a case may be tried when the judge of the court is interested."

This article directs that when the district judge is interested in the suit, he shall call upon the parish judge to try the case.

When, therefore, this suit was brought in the district court, parish of Tangipahoa, the district judge, who was interested, very properly entered an order recusing himself, and calling upon the parish judge to try the case. Thus far the proceeding was regular.

Subsequently, to wit: on the eighth March, 1873, the judge of the Superior District Court of the parish of Orleans granted an order requiring the transfer of the case to his court for trial, and in pursuance thereof Judge Bradley, the parish judge of the parish of Tangipahoa, who had been called by the plaintiff to try the case, ordered the transfer thereof, as required by the judge of the Superior District Court. The sole ground upon which the transfer was ordered was an averment in the motion and affidavit presented to the Superior District Court, "that the said E. P. Ellis, illegally assuming to be judge of the said judicial district, issued a writ of injunction, at the suit of one John W. Addison, against the aforesaid Bradley, parish judge, injoining and restraining him from hearing and determining said suit or proceeding instituted by this appearer against the said Ellis, as aforesaid, and that by reason of said injunction said Bradley, parish judge, is unable to act."

The law upon which the judge of the Superior District Court based his order is section three of act No. 39 of the acts of 1873.

That statute, however, only authorizes the judge of the Superior District Court to order the removal of a cause from the district wherein the parties contesting shall reside, upon the application and "affidavit of the recusation or inability of the judge to act from any legal cause." * * * * Now the question is, was the parish judge of the parish of Tangipahoa unable to act by reason of the injunction referred to in the motion for removal of the cause? Was it in the power of Judge Ellis, the defendant in this suit, to issue an injunction or grant any order preventing the parish judge from trying this case? I think not. If Judge Bradley was the lawful parish judge, as the majority of this

court decides, he had the right to hear and determine the controversy between the plaintiff and defendant for the office of district judge; and no order issued by either of the contestants could destroy the jurisdiction conferred on him by Article 90 of the Constitution. If Judge Bradley was not the lawful parish judge, Judge Addison was, and there was no injunction nor any pretext whatever to defeat his jurisdiction of the case. If it was not in the power of Kemp and Ellis by consent to give the Superior District Court jurisdiction of their case, as was expressly decided in the case of Watkins, how could they, or either of them, grant an order divesting the parish judge of the parish of Tangipahoa of the jurisdiction, expressly conferred by Article 90 of the Constitution. If the case of Watkins and the other decisions of this court on the same subject mean anything, they mean that the jurisdiction of the judge. at the proper forum can not be defeated by any act or contract of the parties. At the time this case was transferred to the Superior District Court the parish judge of the parish of Tangipahoa alone had jurisdiction, and there was no legal cause rendering him unable to act. If Judge Bradley had jurisdiction to order the transfer of the cause to the Superior District Court, it was because he was the acting parish judge; he swears he was the acting parish judge, and if so why had he not jurisdiction to try the case, there being no recusation on his part nor any pretext for a cause of recusation.

In my opinion, a sound construction and indeed the obvious meaning of section 3 of act No. 39 of the acts of 1873 is, that the inability of the judge to act, rendering a removal of the cause necessary, is an actual inability, arising from "a legal cause," and not a sham or apparent inability arising, as in the case before us, from an absurd order issued by one of the litigants in the suit pending before the parish judge. There is no pretense that the plaintiff could not get justice before the parish judge of his own district, and this is not made a ground for the order of removal, even if it were a valid one, about which it is unnecessary for me to express an opinion.

The only law upon which the judge of the Superior District Court did or could base his order for removal is section three of the act No. 39 of the acts of 1873, which, in my opinion, as before stated, did not authorize his order, because there was no affidavit of the inability of the parish judge to act arising from a legal cause. But if there were doubts of this, there is no doubt in my mind that section three of said act is utterly void, because the provision thereof is not covered by the title of the act, as required by article 114 of the constitution. The title of act No. 39 of the acts of 1873 is "an act to amend and re-enact an act entitled 'an act to regulate contestations for judicial offices.'"

Section three provides for a change of venue or for the removal of

causes from one district to an adjoining district, or to the Superior District Court of the parish of Orleans in certain cases, and the object of this section is not mentioned in the title. It is repugnant to article 114 of the constitution and therefore void.

Section one of said act, providing what shall be *prima facie* evidence of title to a judicial office, is also void, because the object thereof is not set forth in the title as required by said article of the constitution.

Believing that the Superior District Court had no jurisdiction of the case, and that the judgment of a court without jurisdiction is an absolute nullity, I deem it unnecessary to enter upon an elaborate discussion of the merits of the controversy. I will state, however, some of the views which I entertain on the subject.

I do not consider that the question whether the Lynch Returning Board or the Wharton Returning Board was the legal returning board, has ever been decided on its merits by any court of this State, at least so far as it concerns the parties to that controversy, and so far as the question incidentally affects the parties to this suit. The case between these returning boards was decided in the Eighth District Court in favor of the Lynch Returning Board, but that court granted a new trial, and subsequently dismissed the suit without considering the merits, on the ground that the law under which said board or boards were organized was repealed by the approval by the Governor of the new election law. Neither of the parties to that suit appealed from that judgment, even if it be conceded that the case had finally been decided on its merits. Therefore, as between the contestants in that case, there was no judgment in favor of the Lynch Returning Board. It was A. P. Field, a third party, who alone appealed from that judgment, and as to him alone the judgment was reversed by the decision of the majority of this court. Both of the contestants being appellees in that appeal, of course there could be no reversal or change of judgment as to them.

Therefore, as to the returning boards, and as to all other parties, except A. P. Field, it has never been decided by any court in this State that the Lynch returning board was the lawful returning board. Indeed, the question has never been presented in a form that it could be considered, except at the first trial in the Eighth District Court, and the judgment rendered at that trial was set aside, as before said, by the judge of that court.

Plaintiff holds a commission from Governor Kellogg, issued on twenty-fourth January, 1873; and the defendant holds one issued by Governor Warmoth on fourth day of December, 1872.

There is no proof in the record that the returns of the November election had been canvassed by a legal returning board before either of these commissions issued. I think the majority of this court errs

in taking judicial notice that the election returns had been legally canvassed when Governor Kellogg commissioned the plaintiff, and they had not been legally canvassed when Governor Warmoth commissioned the defendant.

In the absence of proof to the contrary, I think this court is bound to presume that Governor Warmoth did his duty, and that the truth is, as recited in his commission to Judge Ellis, of the fourth December, 1872, that "at a general election held on the fourth day of November, 1872, in conformity with law, E. P. Ellis was declared duly elected district judge in and for the Sixth Judicial District." * * * Here is a recital in a commission issued by the Governor in the name and by the authority of the State of Louisiana, attested with the great seal of the State, and it stands uncontradicted by any proof in the record.

But it may be urged that the same recital is in the commission issued to Judge Kemp on the twenty-fourth of January, 1873. To this a sufficient reply is, that the first commission issued to an officer whose term of office, fixed in the Constitution, has not expired, is at least *prima facie* the best title to the office. It devolves upon the party presenting the second or a later commission to show affirmatively the invalidity of the title acquired under the first.

In this case the plaintiff has not introduced a particle of proof to invalidate the title of Judge Ellis to the office. He simply presents his commission and asks the court to presume that he is right and that his adversary is wrong; that the commission of Governor Kellogg is a *prima facie* title to the office, but that the prior commission issued by Governor Warmoth is not a *prima facie* title to the office. He has not proved that the returns had not been legally canvassed when the commission issued to Judge Ellis, nor has he proved that they had been legally canvassed when the commission issued to him. He shows no infirmity in the title of his adversary, but merely sets up a title of the same character and of a later date.

In my opinion the commission issued to Judge Ellis on the fourth day of December, 1872, was a *prima facie* title to the office; it was a title that authorized him to administer the office, at least until a better one was adduced; and that it devolved upon the plaintiff attacking this title to prove affirmatively the facts necessary to defeat the same.

Judge Ellis was the district judge at the time of the election, and was entitled, under Article 122 of the Constitution, to continue to discharge the duties of the office, if neither his adversary nor himself showed a valid title under the election of 1872.

There are several important bills of exceptions in the record taken by the defendant which the court has been urged to consider.

The defendant offered several witnesses to prove that the returns of

the election in the Sixth Judicial District were never in possession of the Lynch Returning Board. Also he offered the witness James Long-street, who was a member of that board, to prove that they " did not canvass the legal returns of the election made by the supervisors of registration and election in the parishes of Washington, Livingston, St. Tammany, St. Helena and Tangipahoa, and to show that said re-turns of election from said parishes were never before or in possession of said board, and to prove that no legal quorum of said board was present or acted upon the returns of said election in and for said Sixth Judicial District, and that if any returns were made by them of said election in said Sixth District, and any declaration of the election of the plaintiff, that said returns and declaration were based upon *ex parte* affi-davits, rumors and hearsay, and not upon any official returns." * * *

I think this testimony under the pleadings was admissible and the bills of exceptions were well taken.

It was certainly competent for the defendant to prove that the elec-tion returns of the Sixth Judicial District had never been canvassed by the Lynch Returning Board, and that said returns were never in their possession, as an offset to the pretensions of the plaintiff that he had been returned as elected by said board. This proof in no manner contradicted the official report of said board, because the same, if made, was not introduced in evidence.

The position of the plaintiff in this case is most extraordinary. He asks the court to presume that the legal returning board had not acted when Governor Warmoth commissioned the defendant, and that they had acted, and favorably to him, when Governor Kellogg commissioned him. He asks the court to presume that Governor Warmoth acted in bad faith and that Governor Kellogg acted in good faith in reference to the issuance of these commissions. He proposes to go behind the com-mission issued by Governor Warmoth to inquire whether it was based upon the report of the returning board, but he resists the proof of the defendant that his own commission was not based on the returns of the returning board.

Placing the merits of his case upon the presumed favorable report of the Lynch Returning Board, he offers no proof of their canvass and favorable report in his behalf, but resists, and succeeds in getting the court to exclude the testimony offered by the defendant to prove that no returns had been made from the parishes composing the Sixth Judi-cial District, and there was no canvass thereof by the Lynch Returning Board. He asks the court to take judicial notice that the Lynch Returning Board was the legal returning board; that they had received and canvassed the returns from the Sixth Judicial Distrct, that they had reported in his favor and against the defendant, and that Governor Kellogg's commission to him was based upon this favorable report of

the Lynch Returning Board. Besides all this he demands the exclusion of all the testimony offered by the defendant to disprove the presumptions which he claims in his favor, and to disprove the facts of which he contends this court must take judicial cognizance. In these extraordinary pretensions he was maintained by the judge of the Superior District Court and by the majority of this court.

With all due respect for the views of my learned associates, I feel constrained to differ with them in the conclusion to which they have arrived, and for the reasons stated I dissent in this case.

Rehearing refused.